IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| David Eugene Mullinax, | ) | C/A No. 6:14-1192-TMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| OFC Mathew Scott Waters; OFC Jonathan Bastoni; OFC Christopher Pletcher; OFC C. Maltby, *481/1145*, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff David Eugene Mullinax, a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983 alleging a violation of his constitutional rights by the defendants, who are officers employed by the Greenville County Sheriff's Department.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the parties' cross motions for summary judgment. (ECF Nos. 38 & 39.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Mullinax was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 40.) Both parties filed a response in opposition to the motions for summary judgment (ECF Nos. 43 & 44) and the defendants filed a reply (ECF No. 46). Also before the court is a motion for directed verdict filed by Mullinax. (ECF No. 31.) Having

---

[1] Mullinax was a pretrial detainee confined at the Greenville County Detention Center at the time he filed the Complaint. (ECF No. 1 at 2.) On June 2, 2014, the court received a notice of address change from Mullinax indicating that he had been transferred to the South Carolina Department of Corrections. (ECF No. 17.)

Page 1 of 17



carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted and Mullinax's motions should be denied.

## BACKGROUND

The following facts are either undisputed or taken in the light most favorable to Mullinax. Mullinax's claims arise from an incident on November 14, 2013, when the defendants, who are all law enforcement officers employed by the Greenville County Sheriff's Department, conducted a search of a vehicle parked on Mullinax's premises. The defendants did not have a warrant for the search, which resulted in Mullinax's arrest and imprisonment. Mullinax references two warrants in the Complaint, identified as "#2013A2330209748" and "#2013A2330209749."[2] Mullinax asks the court to force the defendants to provide evidence showing probable cause for the search and arrest or, in the alternative, to award Mullinax monetary damages and immediately release him from custody.[3]

---

[2] Warrant No. 2013A2330209748 corresponds to a charge of possession of less than one gram of methamphetamine, third or subsequent offense, and Warrant No. 2013A2330209749 corresponds to a charge for receiving stolen goods, value more than $2,000 but less that $10,000. See http://www.greenvillecounty.org/scjd/publicindex/disclaim23.asp (choose "Circuit Court" and "Accept" terms and conditions of website; then enter "Mullinax, David, Eugene" in the "Name (*Last, First, Middle*)" field; then follow the "2013A2330209748" and "2013A2330209749" hyperlinks; view "Charges" page for each hyperlink) (last visited June 4, 2015).

[3] To the extent Mullinax seeks release from confinement, such relief is not available under § 1983. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (holding that habeas corpus is the exclusive remedy for a prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release).



# DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see,



e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Mullinax's Claims**

    **1.     Application of Heck v. Humphrey**

The Supreme Court has held that a prisoner's claim for damages is not cognizable under § 1983 where success of the action would implicitly question the validity of the conviction or duration of the sentence, unless the prisoner can demonstrate that the conviction or sentence has been previously invalidated. See Heck v. Humphrey, 512 U.S. 477, 487 (1994). "This mandate is referred to as the 'favorable termination' requirement." Bishop v. Cnty. of Macon, 484 F. App'x 753, 755 (4th Cir. 2012) (citation omitted). To demonstrate a favorable termination of criminal charges, a plaintiff must show that a prior criminal case "has been disposed of in a way that indicates the plaintiff's innocence." Snider v. Seung Lee, 584 F.3d 193, 202 (2009). Moreover, "[c]ourts have held that a simple, unexplained nolle prosequi, dismissal, or disposal of pending state charges that results in the dismissal of the charges for reasons other than the defendant's innocence does not satisfy the favorable termination requirement." Hewitt v. D.P. Garrison, C/A No. 6:12-3403-TMC, 2013 WL 6654237, at *2 (D.S.C. Dec. 17, 2013). The United States Court of Appeals for the Fourth Circuit recently noted that "civil claims based on unreasonable searches do not *necessarily* imply the resulting convictions were unlawful . . . . if (1) the conviction derives from a guilty plea rather than a verdict obtained with unlawfully obtained evidence and (2) the plaintiff does not plead facts inconsistent with guilt." Covey v. Assessor of Ohio County, 777 F.3d 186, 197 (4th Cir. 2015)



(citations omitted) (emphasis in original).  However, the Fourth Circuit stated that claims of false imprisonment and a deprivation of liberty "*would* imply the conviction's invalidity" and trigger Heck's favorable termination requirement.  Id.

The defendants argue that Mullinax's claims are barred by Heck because the November 14, 2013 search in question resulted in Mullinax's entry of a guilty plea.  Mullinax's motion for a directed verdict confirms that the challenged search and arrest caused him to be "incarcerated for 6 months in the County jail and at present 6 more months in the [South Carolina Department of Corrections]."  (Pl.'s Mot. Dir. Verdict at 2, ECF No. 31 at 2.)  Mullinax's response in opposition to the defendant's motion for summary judgment further indicates that the November 2013 vehicle search resulted in an additional search of his property by "other officers" who discovered a motorcycle that "they state was stolen."[4]  (Pl.'s Resp. Opp'n at 3, ECF No. 44 at 3.)  While Mullinax's response does not specifically address the defendants' argument that his claims are barred by the favorable termination requirement pronounced in Heck, Mullinax asserts that the possession of methamphetamine charge, stemming from the November 2013 search of a vehicle on his premises, was "dropped by the Solicitor's Office in Greenville County."  (Id.)  In his motion for

---

[4] In his Complaint, Mullinax asserts that Defendant Waters improperly inflated the value of property listed in a warrant issued against Mullinax for possession of stolen goods.  (See Compl. at 4, ECF No. 1 at 4.)  However, the Complaint contains no factual allegations associated with a search for, or discovery of, a motorcycle on Mullinax's property by the named defendants.  "[A] party is generally not permitted to raise a new claim in response to a motion for summary judgment."  White v. Roche Biomedical Laboratories, Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992); see also Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment).  Thus, to the extent Mullinax is attempting to expand his claims to include a search for, or seizure of, a motorcycle, such claims are not properly before the court.



summary judgment, Mullinax also claims that the methamphetamine charge was dismissed for lack of evidence. (Pl.'s Mot. Summ. J. at 3, ECF No. 38 at 3.)

The defendants do not provide any evidence in support of their contention that Mullinax entered a guilty plea to a charge associated with the November 2013 search and arrest; however, a "court may take judicial notice of factual information located in postings on government websites." Adams v. Warden, FCI Estill, C/A No. 0:13-3330-JFA-PJG, 2014 WL 1366036, at *3 n.4 (adopting and incorporation report and recommendation) (collecting cases). Therefore, the court takes judicial notice of the records of the Clerk of Court for Greenville County, which indicate that Mullinax entered a guilty plea on May 13, 2014 to the possession of stolen goods charge referenced in the Complaint. See http://www.greenvillecounty.org/scjd/publicindex/disclaim23.asp (choose "Circuit Court" and "Accept" terms and conditions of website; then enter "Mullinax, David, Eugene" in the "Name (*Last, First, Middle*)" field; then follow the "2013A2330209749" hyperlink; view "Charges" and "Sentencing" pages) (last visited June 4, 2015).[5] The Greenville County Clerk of Court's records further reflect that Mullinax entered guilty pleas on May 13, 2014 to burglary and possession of methamphetamine charges stemming from separate arrests that are unrelated to the instant action. Id. (follow the "2013A2330207415" and "2013A2310100120" hyperlinks; view "Charges" and "Sentencing" pages). Mullinax's charge of possession of methamphetamine, resulting from the November 2013 search of the vehicle on Mullinax's premises, was dismissed on May 14, 2014, because he "Pled Guilty to Other Charges." Id. (following "2013A2330209748" hyperlink; view "Charges" page).

---

[5] All Greenville County Public Index information referenced herein has been preserved as an ECF attachment to this Report and Recommendation.



In this case, a finding by this court in Mullinax's favor on his false imprisonment claims would necessarily implicate the validity of his conviction for the possession of stolen goods charge referenced in the Complaint, see Covey, 777 F.3d at 197, and Mullinax has not forecasted any evidence to show that he successfully challenged this conviction.[6]  Further, Mullinax has presented no evidence in this case to substantiate his assertion that the possession of methamphetamine charge resulting from the November 2013 arrest and search of a vehicle on his premises was dismissed for lack of evidence.  As court records reflect that the charge was actually dismissed based on Mullinax's guilty plea to other charges, he has not established a favorable termination of the possession of methamphetamine charge directly related to the Fourth Amendment claims raised in this case.  See Fritz v. Akosomitas, C/A No. 2:13-3532-RMG, 2015 WL 1346311, at *6 (D.S.C. Mar. 23, 2015) ("A dismissal of pending state charges for reasons other than the criminal defendant's innocence does not satisfy the Heck 'favorable termination' requirement."). Therefore, the court concludes that Mullinax's claims are barred by Heck, and the defendants' motion for summary judgment should be granted.

### 2.    Merits

Even if Heck did not bar Mullinax's Fourth Amendment claims, they nonetheless fail on the merits.

---

[6] In Covey, the Fourth Circuit reiterated "that Heck bars a claim that implicates the invalidity of a conviction or sentence even if the claimant is no longer in custody, but only if the claimant could have practicably sought habeas relief while in custody and failed to do so."  Covey, 777 F.3d at 197-98.  While it is clear that Mullinax remains in custody, the status of Mullinax's sentence for the possession of stolen goods charge is unclear.  However, Mullinax provides no indication that he has been unable for any reason to seek habeas relief for the possession of stolen goods charge associated with the November 2013 arrest resulting in his imprisonment.  Thus, Heck is applicable to that charge.



### a. Warrantless Entry onto Premises

"The Fourth Amendment protects homes and the 'land immediately surrounding and associated' with homes, known as curtilage, from unreasonable government intrusions." Covey, 777 F.3d at 192 (quoting Oliver v. United States, 466 U.S. 170, 180 (1984)).  Moreover, "[i]t is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (internal quotation marks and citations omitted).  One such exception is "the so-called knock-and-talk exception to the Fourth Amendment's warrant requirement," under which, " 'a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.' " Covey, 777 F.3d at 192 (citations omitted).

The defendants argue that they entered Mullinax's property without a warrant for a legitimate reason unrelated to a search, and provide affidavit testimony from Defendants Waters and Bastoni in support of their contention that the defendants' actions did not violate the Fourth Amendment. Defendants Waters and Bastoni testified that the Greenville County Sheriff's Office received an anonymous tip on November 14, 2013 that a person named David Mullinax was selling methamphetamine and prescription pills from his residence at 304 Palmetto Avenue in Greenville, South Carolina. (Waters Aff. at 1-2, ECF No. 39-1 at 1-2; see also Bastoni Aff. at 2, ECF No. 39-3 at 2.)  The tip described Mullinax as an approximately fifty-year-old white male who drove a blue moped. (Id.)  Bastoni testified that a background search revealed multiple prior arrests of Mullinax for drug-related offenses and that the location of Mullinax's residence was known to be a high-volume drug trafficking area. (Bastoni Aff. at 1-2, ECF No. 39-3 at 1-2.)



Defendants Waters and Maltby drove to the vicinity of Mullinax's address on November 14, 2013 to observe the property based on the anonymous tip. (Waters Aff. at 1, ECF No. 39-2 at 1.) Bastoni testified that the property has no gates or walls to prevent access to the general public and that the front, sides, and much of the home's backyard is open to clear view from the surrounding public streets. (Bastoni Aff. at 1, ECF No. 39-3 at 1.) While observing the 304 Palmetto Avenue property, Waters saw a white male, fitting the description provided by the tipster, enter the driveway on a blue moped. (Waters Aff. at 2, ECF No. 39-2 at 2.) A 2001 Chevrolet Suburban then was driven into the driveway and parked with the motor running. (Id.) Waters observed the person fitting Mullinax's description enter a small storage shed, then approach and enter the passenger side door of the Suburban. (Id.) Both defendants testified that, based on their experience, such behavior was highly indicative of a drug deal; thus, Bastoni, Waters, and Maltby walked approximately five feet from the public street onto the property to speak with the occupants of the vehicle. (Waters Aff. at 2, ECF No. 39-2 at 2; see also Bastoni Aff. at 2, ECF No. 39-3 at 2-3.) Bastoni made contact with the driver, who identified herself as Charity Carwise, and the passenger, who identified himself as David Mullinax and the owner of the property. (Bastoni Aff. at 3, ECF No. 39-3 at 3.) Bastoni ran a computer check of the identities provided, which reflected previous arrests of Carwise and Mullinax for drug-related charges. (Id.) Bastoni's check of the Suburban's license plate reflected that the vehicle was not registered to David Mullinax, and Carwise confirmed that the vehicle belonged to her mother. (Id.) Bastoni asked Carwise to speak with him privately and she agreed. (Id.; see also Waters Aff. at 3, ECF No. 39-2 at 3.) Mullinax then began cursing at the officers and yelling at them to leave his yard. (Id.) Carwise declined consent to search the vehicle, and a K-9 unit responded approximately fifteen to twenty minutes later. (Bastoni Aff. at 3-4, ECF No. 39-3

at 3-4; see also Waters Aff. at 3-4, ECF No. 39-2 at 3-4.)  A drug dog alerted to the presence of drugs, and methamphetamine was found in the vehicle.  (Id.)  Carwise and Mullinax were arrested. (Bastoni Aff. at 4, ECF No. 39-3 at 4; see also Waters Aff. at 4, ECF No. 39-2 at 4.)

In response in opposition to the defendants' motion, Mullinax asserts that the defendants did not receive any anonymous tip and did not know Mullinax's identity until they made contact with him in the vehicle on November 14, 2013.  (Pl.'s Resp. Opp'n Summ. J. at 1-2, ECF No. 44 at 1-2.) However, Mullinax has forecast no evidence to demonstrate that the defendants did not have a legitimate reason to approach the vehicle in which he was sitting for the purpose of making contact with the occupants.  Further, Mullinax's response concedes that the defendants had to travel only five feet onto his property to reach the idling vehicle in which he was sitting.  (Id. at 4.)  Mullinax does not contest the defendants' assertion that the property was in clear view of the surrounding streets, or Defendant Waters's testimony that Mullinax entered a shed prior to getting into a Suburban belonging to Carwise.

Accordingly, based on the record before the court, the court concludes that no reasonable jury could find the defendants' entry onto Mullinax's property, for the purposes of speaking with the vehicle's occupants, unlawful.  See Rogers v. Pendleton, 249 F.3d 279, 289-90 (4th Cir. 2001) (holding that police have the right, under the "knock and talk" exception, to approach and speak with inhabitants without a warrant).  Therefore, the defendants' motion for summary judgment should be granted as to Mullinax's claims associated with such entry.

      **b.**    **Investigative Detention**

Law enforcement officers may "briefly detain a person for investigative purposes if they have a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.' " United



States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)). Such an investigatory "detention requires more than an inchoate and unparticularized suspicion or hunch, but it does not require probable cause." United States v. McBride, 676 F. 3d 385, 392 (4th Cir. 2012) (internal quotation marks and citation omitted). In assessing the reasonableness of the investigative detention, courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citation omitted). Officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." Id. at 273-74 (citation omitted).

The defendants contend that their investigatory detention of Mullinax after the initial contact requesting identification did not violate Mullinax's Fourth Amendment rights because the officers had reasonable suspicion that Mullinax and Carwise were engaged in criminal activity. As indicated above, Defendants Waters and Bastoni provided affidavit testimony that they: (1) received an anonymous tip that Mullinax was selling drugs from his residence; (2) were aware that the area of Greenville where Mullinax reportedly lived was prone to drug activity; and (3) were aware that Mullinax had several previous arrests for drug-related offenses. (See generally Waters Aff. at 1-4, ECF No. 39-1 at 1-4; see also Bastoni Aff. at 1-4, ECF No. 39-3 at 1-4.) These defendants further testified that Mullinax, who fit the tipster's description, was seen entering a storage shed immediately prior to getting into a parked, idling, vehicle. (Id.) Based on their experience, Defendants Waters and Bastoni believed that such behavior was indicative of a drug transaction. (Id.)



Mullinax's response in opposition to the defendants' motion for summary judgment asserts that the defendants refused to comply with Mullinax's request to leave the property after Mullinax's identification. (Pl.'s Resp. Opp'n Summ. J. at 2, ECF No. 44 at 2.) Mullinax also questions the existence of the anonymous tipster in a purely conclusory fashion, unsupported by any evidence. (Pl.'s Resp. Opp'n Summ. J. at 1-2, ECF No. 44 at 1-2.) However, Mullinax fails to forecast evidence to dispute the defendants' contention that they had reasonable suspicion after Mullinax's identification to detain him for purposes of an investigatory detention based on the knowledge and observations discussed in the affidavits of Waters and Bastoni.

Accordingly, based on the evidence in the record and the totality of the circumstances, the court concludes that no reasonable jury could find that the defendants' investigatory detention of Mullinax violated his rights under the Fourth Amendment. Therefore, the defendants are entitled to summary judgment on Mullinax's claims related to his investigatory detention.

### c.     Search of the Suburban

"The Fourth Amendment protects against unreasonable searches and seizures . . . . [and a] government agent's search is unreasonable when it infringes on an expectation of privacy that society is prepared to consider reasonable." United States v. Castellanos, 716 F.3d 828, 832 (4th Cir. 2013) (internal quotation marks and citations omitted). To "demonstrate a legitimate expectation of privacy, [a plaintiff] must have a subjective expectation of privacy, and that subjective expectation of privacy must be objectively reasonable." Id. (internal quotation marks and citations omitted). "When attempting to determine whether a defendant has a reasonable expectation of privacy in property that is held by another, [courts] consider such factors as 'whether that person claims an ownership or possessory interest in the property, and whether he has established a right or taken



precautions to exclude others from the property.' " Id. at 833-34 (quoting United States v. Rusher, 966 F.2d 868, 875 (4th Cir. 1992)).

The defendants assert that the search of the Suburban did not violate Mullinax's Fourth Amendment rights, because he did not own, or have a reasonable expectation of privacy in, the vehicle. The affidavit testimony in this case reflects that the Suburban belonged to Carwise's mother. (Waters Aff. at 3, ECF No. 39-2 at 3; see also Bastoni Aff. at 3, ECF No. 39-3 at 3.) The affidavit testimony further states that Carwise parked the Suburban approximately five feet from, and in clear view of, a public street. (Bastoni Aff. at 3, ECF No. 39-3 at 3.) Mullinax's response in opposition to the defendants' motion for summary judgment does not contest the defendants' evidence that Mullinax had no ownership or other possessory interest in the Suburban. Further, Mullinax does not dispute the defendants' estimation of the vehicle's distance from the public road, or their contention that the Suburban could be clearly seen from the street.

Accordingly, the court concludes that no reasonable jury could find that the defendants' search of the Suburban violated Mullinax's rights under the Fourth Amendment. Therefore, the defendants' motion for summary judgment should be granted as to Mullinax's claims associated with the search of the vehicle.

### d. False Imprisonment

To establish a § 1983 claim based on a Fourth Amendment violation for false arrest, false imprisonment, or malicious prosecution a plaintiff must show that the seizure was effected without probable cause. See Massey v. Ojaniit, 759 F.3d 343, 356 (4th Cir. 2014); Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001); Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996). Thus, there is no § 1983 claim for false



arrest, false imprisonment, or malicious prosecution unless the officer lacked probable cause. See Street v. Surdyka, 492 F.2d 368, 372-73 (4th Cir. 1974). "Probable cause to justify an arrest arises when 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). It requires more than bare suspicion, but less than evidence necessary to convict, Porterfield, 156 F.3d at 569, and the determination of whether probable cause exists is reviewed under the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 238 (1983); Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996).

In this case, Mullinax was arrested without a warrant, and the issue before the court is not whether Mullinax committed the offense, but whether the defendants reasonably believed that Mullinax committed the crime. See Brown, 278 F.3d at 367 ("For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required."). Accordingly, Mullinax's argument that he is innocent of the possession of methamphetamine charge based on a subsequent dismissal of the charge does not establish that the defendants lacked probable cause. Rather, Mullinax must demonstrate that the defendants' belief that a violation occurred was not only incorrect, but was objectively unreasonable. Id. at 367-68.

The record before the court shows that the defendants had grounds to reasonably believe that Mullinax committed the crime of possession of methamphetamine. Defendants Waters and Bastoni testified to the receipt of an anonymous tip that Mullinax, who had prior arrests for drug-related offenses, was selling illegal drugs from his residence, which was corroborated by their observation



of a person fitting Mullinax's description on November 14, 2013 engaging in suspicious behavior suggestive of a drug transaction. (Waters Aff. at 1-3, ECF No. 39-1 at 1-3; see also Bastoni Aff. at 2, ECF No. 39-3 at 2-4.) The affidavit testimony further reflects that a drug dog alerted to the presence of narcotics inside the vehicle. (Id.)

While Mullinax's response in opposition to the defendants' motion for summary judgment alleges that no anonymous tipster existed, he forecasts no evidence, other than his own conclusory allegation, to dispute the affidavit testimony of Defendants Waters and Bastoni. (Pl.'s Resp. Opp'n Summ. J. at 1-2, ECF No. 44 at 1-2.) Mullinax further asserts that the drug transaction alleged by the defendants actually constituted two private individuals having a conversation in a car that remained running due to the cold temperature on November 14, 2013. (Id. at 4.) However, Mullinax does not contest the affiants' contention that he lived in an area known for drug activity, that he had multiple prior arrests for drug-related offenses, or that he visited a storage shed immediately prior to entering the Suburban. Moreover, Mullinax does not dispute the defendants' assertion that a drug dog alerted officers to the presence of narcotics in the Suburban.

As Mullinax has not presented evidence to demonstrate that the defendants lacked an objectively reasonable belief that Mullinax was committing a criminal offense on November 14, 2013, the court finds that the defendants had probable cause to arrest Mullinax for possession of methamphetamine. See Brown, 278 F.3d at 367. Accordingly, based on the record before the court and the totality of the circumstances, the court concludes that no reasonable jury could find that Mullinax's arrest for possession of methamphetamine was made without probable cause. The court need not decide whether the defendants also had probable cause for the possession of stolen goods charge referenced in the Complaint, because a finding of probable cause for "at least one charge for



an arrest on multiple charges [is sufficient to] withstand a Fourth Amendment challenge." Gantt v. Whitaker, 57 F. App'x 141, 149, n.7 (4th Cir. 2003); Gardner v. Long, C/A No. 8:09-2563-TLW-BHH, 2010 WL 5691645, at *5 (D.S.C. Nov. 3, 2010) (same), adopted by 2011 WL 379757 (D.S.C. Feb. 2, 2011).  Therefore, the defendants' motion for summary judgment should be granted as to Mullinax's false imprisonment claims.  To the extent Mullinax's Complaint may be construed to allege claims of false arrest or malicious prosecution, the defendants' are likewise entitled to summary judgment for such claims.

**C.     Other Claims**

To the extent that Mullinax's Complaint may be construed to allege any other causes of action, the court finds that he has failed to plead sufficient facts to state a plausible claim.  See Ashcroft v. Iqbal, 556 U.S. 662 (2009).

## RECOMMENDATION

Accordingly, the court recommends that the defendants' motion for summary judgment (ECF No. 39) be granted and Mullinax's motions for a directed verdict and summary judgment (ECF Nos. 31 & 38) be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 4, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).